UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-CR-08063-KING-1

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

JOHN ROBERT HASSON,

      Defendant,

_____/

**ORDER DENYING DEFENDANT'S MOTION
TO REDUCE SENTENCE WITHOUT PREJUDICE**

THIS CAUSE is before the Court on the Motion to Reduce Sentence (the "Motion) (DE 882), filed on July 7, 2020 by Defendant John Robert Hasson. The Court has carefully considered the Motion, the Government's Response in Opposition (DE 887), Hasson's Reply (DE 889), and the parties' supplemental filings (DE 892, 893, 894).

**I. BACKGROUND**

On June 8, 2000, this Court sentenced Hasson to 480 months imprisonment (or 40 years) on his convictions for Wire Fraud and Conspiracy to Commit Crimes Against the United States, among other things. *See* DE 420. Hasson is now a 68-year-old man who suffers from type 2 diabetes and hypertension.[1] *See, e.g.*, DE 882-3. For that reason, Hasson seeks compassionate release from prison (pursuant to 18 U.S.C. § 3582(c)) to reduce his exposure to the COVID-19 virus, which has serious

---

[1] According to the Government, Hasson also tested positive for COVID-19 on July 13, 2020. *See* Gov.'s Resp. at 21.

and potentially lethal consequences for individuals of his age and medical background.[2] *See generally* Mot.

## II. LEGAL STANDARD

The compassionate release provision of 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides, in pertinent part, that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . if it finds that extraordinary and compelling reasons warrant such a reduction" and if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239. According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" may exist when the defendant suffers from (1) a "terminal illness" or (2) a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

## III. DISCUSSION

---

[2] The Center for Disease Control and Prevention ("CDC") has explained that "older adults" and "people with underlying medical conditions" are at a greater risk of becoming seriously ill should they contract the virus, potentially requiring hospitalization, intensive care, and/or a ventilator to help them breathe. *See* Ctrs. for Disease Control and Prevention, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited July 29, 2020). Relevant here, type 2 diabetes and hypertension are considered medical conditions that elevate an individual's risk with respect to COVID-19. *See* Ctrs. For Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 29, 2020).

Hasson argues that he faces potentially lethal consequences with continued exposure to COVID-19 at FCI-Miami. *See generally* Mot. The Government advances two arguments in response.

**A. Exhaustion of Remedies**

First, the Government argues that Hasson has not exhausted his administrative remedies and, therefore, the Court lacks jurisdiction to grant the requested relief. Gov.'s Resp. at 11–18. While the Government argues that Hasson never filed a COVID-19 related compassionate release request with the Bureau of Prisons ("BOP"), Hasson disagrees. *See* Reply at 4. The Court ordered additional briefing to clarify whether Hasson (in fact) requested home confinement from the Bureau of Prisons based on COVID-19, but the record is still unclear. DE 890.

The Court would normally resolve this factual dispute through an evidentiary hearing and allow the attorneys for each side to clarify their respective positions. However, doing so here would be futile. By the time the Court could schedule a hearing, or even wait for another round of briefing to conclude, this dispute could be rendered moot by Hasson succumbing to COVID-19. This counsels against applying the exhaustion requirement in narrow circumstances (like here) where a matter of days can, quite literally, be a matter of life and death.[3]

Indeed, if the Court held otherwise, Hasson may be forced to file a new request with the BOP, wait thirty days for a ruling, and then file another motion for compassionate release under § 3582(c) if the BOP did not rule in his favor. Hasson would be unfairly prejudiced if that were so. He faces an imminent threat while incarcerated at FCI-Miami, which is experiencing a severe COVID-19 outbreak. Willard Shepard, *Inmates, Correctional Officers Concerned About Growing Number*

---

[3] There is ample case law supporting this theory. *See, e.g.*, *United States v. Platten*, Case No. 08-80148 (DE 155) (S.D. Fla. Apr. 17, 2020) (Middlebrooks, J.); *United States v. Minor*, Case No. 18-80152 (DE 35) (S.D. Fla. Apr. 17, 2020) (Middlebrooks, J.); *United States v. Haney*, Case No. 19-cr-541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020).

*of COVID Cases at Miami Prison*, NBC Miami, Jul. 15, 2020, at https://www.nbcmiami.com/news/local/inmates-correctional-officers-concerned-about-growing-number-of-covid-cases-at-miami-prison/2262886/. The Court so finds that it has jurisdiction. *See McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992) (recognizing an exception to the doctrine of administrative exhaustion where "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action.").

### B. Extraordinary and Compelling Reasons

Having jurisdiction to grant the requested relief, the Court now turns to the merits. Among other things, the Government argues that Hasson should not be released from prison because he poses a health risk to his family and the public. Gov.'s Resp. at 23. According to the Government, "Hasson is now positive for COVID-19 and his health condition is a public health risk. He is receiving treatment by BOP for his medical condition. To release Hasson, positive for COVID-19, into the community presents a health risk for his family and the community at large." *Id.* The Court agrees.

The plain language of the compassionate release statute compels this conclusion. In reducing a sentence under § 3582(c)(1)(A), the court must consider the applicable policy statements issued by the Sentencing Commission. And, here, the applicable policy statement provides that the court may reduce a term of imprisonment only if the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). While the Court acknowledges that Hasson's medical condition elevates his risk with respect to COVID-19, the Court considers it inappropriate to release Hasson from BOP custody while he is infected with the virus. Doing so would place Hasson in a new environment, surrounded by new people who might be exposed to the virus for the

first time. This would be unwise from a policy standpoint and unauthorized from a legal standpoint. *See, infra,* § 1B1.13(2).

Addressing these concerns, Hasson states that he would be living with his daughter in Palm City, Florida if he were released, and that "[t]he family has already made arrangements to rent an RV that will be placed on his daughter's property and used to quarantine Mr. Hasson." Reply at 3. This proposal, while sensible in theory, leaves too many unanswered questions. For example, what if Hasson were visited by a nurse, doctor or other first responder while quarantined on his daughter's property? Would Hasson limit his contact with his family members, and if so, to what extent? Would those family members be wearing masks or other personal protective equipment ("PPE") when interacting with him? Without a more detailed plan in place, the Court is not satisfied that the safety of the public will be adequately protected by releasing an inmate currently infected with COVID-19.

To be sure, the Court is not commenting on the quality of medical care provided at FCI-Miami. As the parties are aware, "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Estelle v. Gamble*, 429 U.S. 97 (1976). But whether the medical care provided at FCI-Miami complies with the mandates of the Eighth Amendment is beyond the scope of today's holding. Instead, the Court is addressing the narrow question of whether Hasson should be released even though he recently tested positive for COVID-19. The Court answers that question in the negative, declining to "take any risk of transferring [an] inmate[] to home confinement that will contribute to the spread of COVID-19, or put the public at risk in other ways."[4]

---

[4] This language is taken from the Attorney General's memorandum to the Bureau of Prisons regarding when an inmate at risk for COVID-19 should be placed on home confinement. *See* Memorandum for Director of Bureau Prisons, William Barr, Attorney General, Prioritization of Home Confinement as Appropriate in Response to the COVID-19 Pandemic (Mar. 26, 2020). While not binding, the Court finds it persuasive that the Attorney General mandated a 14-day quarantine period before releasing any inmate from a BOP facility to home confinement. *Id.* Assuming the goal is to avoid the release of inmates who have COVID-19, today's holding

Accordingly, it is **ORDERED, ADJUDGED and DECREED** that Defendant's Motion for Compassionate Release **(DE 882)** be, and the same hereby is, **DENIED WITHOUT PREJUDICE** to his immediate right to refile his Motion once he has recovered from COVID-19.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, in Miami, Florida, this 30th day of July, 2020.

_/s/ James Lawrence King_
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

**cc:**  **All Counsel of Record**

---

This language is taken from the Attorney General's memorandum to the Bureau of Prisons regarding when an inmate at risk for COVID-19 should be placed on home confinement. *See* Memorandum for Director of Bureau Prisons, William Barr, Attorney General, Prioritization of Home Confinement as Appropriate in Response to the COVID-19 Pandemic (Mar. 26, 2020). While not binding, the Court finds it persuasive that the Attorney General mandated a 14-day quarantine period before releasing any inmate from a BOP facility to home confinement. *Id.* Assuming the goal is to avoid the release of inmates who have COVID-19, today's holding promotes that goal.

---

promotes that goal.