UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

99-08063-CR-KING

UNITED STATES OF AMERICA

v.

JOHN ROBERT HASSON *et. al.*,

    Defendants.

_____/

**RENEWED EXPEDITED MOTION FOR COMPASSIONATE RELEASE**

    John Robert Hasson, through undersigned counsel and pursuant to 18 U.S.C. § 3582(c)(1)(A) and S.D.Fla. Local Rule 7.1(d)(2), renews, as requested by the Court, his motion for compassionate release, and in support states:

    Mr. Hasson filed a motion for compassionate release on July 7, 2020. (DE 882). On July 30, 2020, this Court denied the motion without prejudice because, at the time, he was infected with COVID-19. (DE 895). The Court invited Mr. Hasson to refile the motion when he tested negative for the virus. Court Order, p. 4.[1] Mr. Hasson has twice tested negative for the virus, been released from the hospital, and returned to FCI-Miami where he is in quarantine until Friday, August 7, 2020. Mr. Hasson is hopeful of being released to his family prior to reentry into general population at FCI-Miami.

---

[1] Mr. Hasson renews all the arguments, factual representations, and exhibits in his original motion.

As the Court is aware, COVID-19 is still spreading through FCI-Miami. Prisons are an ideal environment for transmission of contagious diseases and once a virus is introduced it is virtually impossible to control the spread due to the lack of resources and living conditions.² Despite limited testing within FCI-Miami, 95 inmates and 24 staff members have tested positive. *See* BOP.gov. It is inevitable that Mr. Hasson will be re-exposed to the virus once he is removed from his current 14-day quarantine.

The Court has correctly acknowledged that it has jurisdiction over this motion. Court Order, p. 4. The Court also acknowledged the urgency of this matter and that "extraordinary and compelling reasons" exist because Mr. Hasson's age and "medical condition elevate[ ] his risk with respect to COVID-19." *Id*. at 2, 4. At least twenty-five BOP inmates have died while awaiting decisions on their compassionate release motions.³

Indeed, Mr. Hasson is still in grave danger despite having already been infected with COVID-19. The World Health Organization has concluded that there is "currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from second infection."⁴ Mr. Hasson reports that three of

---

² Joseph A. Bick (2007), Infection Control in Jails and Prisons, *Clinical Infectious Diseases* 45(8):1047-1055, at https://doi.org/10.1086/521910; *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) at https:/bit.ly/2TNcNZY.

³ https://www.washingtonpost.com/local/public-safety/frail-inmates-could-be-sent-home-to-prevent-the-spread-of-covid-19-instead-some-are-dying-in-federal-prisons/2020/08/02/992fd484-b636-11ea-9b0f-c797548c1154_story.html

⁴ World Health Organization, *"Immunity Passports" in the Context of COVID-19* (Apr. 24, 2020), available https://www.who.int/news-room/commentaries/detail/immunity-passports-in-the-context-of-covid-19.

his fellow inmates have gotten the virus a second time at FCI-Miami. In fact, catching the disease again may be even more dangerous.[5]

*United States v. Huarte* is very similar to Mr. Hasson's situation and is instructive. 11-cr-20587-Scola, (July 31, 2020)(DE 1584). In *Huarte*, the defendant suffered from obesity and Legionnaires' Disease. She tested positive for COVID-19, experiencing mild symptoms. She later tested negative and was released from prison by Judge Scola because "[a]lthough she has not required hospitalization for this illness thus far, the Court acknowledges the possibility that she could still develop complications from the disease, and crucially, [she] is still susceptible to catching COVID-19 a second time." Here, Mr. Hasson *was* hospitalized because of his difficulty to breathe and concern over his heart condition. He is at tremendous risk of long-term or fatal consequences if he is reintroduced to the prison population at FCI-Miami where is currently quarantined until Friday, August 7, 2020. "The risk is simply too great that the BOP will fail to detect a decline in [defendant's] condition and, if his condition suddenly becomes even more emergent than it currently is, that the BOP will fail to provide him the specialized care he needs. The Court will not play Russian roulette with [the defendant's] life." *United States v. McCall*, No.2:18CR95-MHT, ____ F.Supp.3d _____, 2020 WL 2992197, at *2 (M.D. Ala. June 4, 2020).

---

[5] https://www.vox.com/2020/7/12/21321653/getting-covid-19-twice-reinfection-antibody-herd-immunity.

3

Only one issue remains: whether Mr. Hasson is a danger to the community. Mr. Hasson's release to home confinement will be safe for the community because he is not currently contagious. Mr. Hasson was released from the hospital after two negative tests for COVID-19. He is now being quarantined at FCI-Miami and will be released from quarantine on Friday, August 7, 2020.

In addition, as stated in his previous filings, Mr. Hasson has a safe re-entry plan for home confinement. Because Mr. Hasson has a stable, loving, and welcoming family, his likelihood of staying healthy is far greater outside of FCI-Miami. His son, Blake Hasson, will pick him up in a large sport utility vehicle with a third row of seating so that Mr. Hasson will be distanced from his son, who will drive. Blake Hasson will be wearing protective equipment, including a mask and gloves. Mr. Hasson will be living with his daughter in Palm City, Florida, less than a two-hour drive from FCI-Miami. The family has already made arrangements to rent an RV that will be placed on his daughter's property and used to quarantine Mr. Hasson. Mr. Hasson qualifies for Medicare and will be able to pay his own medical bills should they arise.

Moreover, Mr. Hasson is not likely to be a recidivist. Mr. Hasson's convictions are for non-violent crimes. Sentencing Commission data indicates that offenders with Criminal History Category I (like Mr. Hasson) have the lowest rates

of recidivism (33.8%) and fraud convictions carry the lowest rate of recidivism by offense (34.2%).[6]

Mr. Hasson is a vastly different person than the one sentenced by this Court over 20 years ago.  As his original motion for release details, he has been an exemplary inmate, helping staff with other inmates by teaching and being a role model.  He has literally saved lives by risking his own life and intervening in violent conflicts between inmates and staff.   He saved the life of former BOP employee Cathy Bender, which by itself constitutes "extraordinary and compelling reasons" to reduce Mr. Hasson's sentence.  The Sentencing Guideline data regarding Mr. Hasson's non-violent conviction and his lack of prior criminal history, the 21 years he has already served in prison (over 50%), and his exemplary prison record strongly indicated that he will pose no threat to society.

Undersigned has conferred with the prosecutor, who has no position regarding this motion at this time.

WHEREFORE, Mr. Hasson respectfully requests that this Court order him released from custody immediately.

Respectfully submitted,

JOHN W. WYLIE, P.A.
s/ John W. Wylie_____
Attorney: John W. Wylie, Esq.
Florida Bar No. 0133817

---

[6] *See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf , pp. 5, 19, 20.

        150 Southeast 2nd Avenue, Suite 602
        Miami, Florida 33131
        Telephone:   (305) 358-6767

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing was electronically filed via EM/ECF this 4th day of August, 2020.

        s/ John W. Wylie
        John W. Wylie